UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERTO RODAS FRANCISCO RODAS,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-2840-MLP

ORDER

Petitioner Roberto Rodas Francisco Rodas[1] is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, challenging his immigration detention as unlawful. (*See generally* dkt. # 1.) He seeks release from custody or, alternatively, a bond hearing. (*Id.* at 8-9.) Respondents filed a return (dkt. # 8), together with supporting declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Do Rodriguez (dkt. # 9) and their counsel Peter Clark (dkt. # 10). Petitioner filed a traverse in reply (dkt. # 11).

[1] Petitioner is also known as Ricardo Luis-Tomas. (*See* dkt. # 1, ¶ 2.) The circumstances of Petitioner's "AKA" are unclear from the record, but it does not appear the identity of Petitioner is in dispute.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth below.[2]

## I. BACKGROUND

Petitioner is a native and citizen of Guatemala, who first entered the United States in 1992, near Miami, Florida. (Rodriguez Decl., ¶¶ 3-4.) On May 28, 1998, DHS served Petitioner with a Notice to Appear ("NTA") charging him with inadmissibility under the Immigration and Nationality Act ("INA"). (*Id.* ¶ 5.) The NTA is not in the record, but Officer Rodriguez asserts it directed Petitioner to attend an immigration hearing in the Miami immigration court on August 18, 1998. (*Id.* ¶ 6.) Petitioner did not appear for the hearing, and the immigration judge ordered Petitioner removed to Guatemala *in absentia*. (*Id.*; *see* Clark Decl., ¶ 2, Ex. 1 (removal order).)

While the record is unclear, Petitioner must have left the United States because on August 3, 2009, border patrol apprehended Petitioner near Naco, Arizona, and he admitted entering the United States the day prior from Mexico. (Rodriguez Decl., ¶ 8.) Petitioner was taken into custody, processed for expedited removal, and removed to Guatemala. (*Id.* ¶¶ 8-10.) The parties do not address what effect, if any, Petitioner's expedited removal in 2009 had on his 1998 removal order issued *in absentia*. (*See generally* dkt. ## 1, 8.)

On October 13, 2017, Petitioner again entered the United States by crossing the Rio Grande River near Presidio, Texas. (Rodriguez Decl., ¶ 11.) He was detained by border patrol, "processed for a reinstatement of [his] prior order of removal" and transported for further processing. (*Id.*; *see* Clark Decl., ¶ 2, Ex. 2 (Notice to Reinstate).) Petitioner was not removed pursuant to his reinstated order of removal but instead released into the United States on an Order of Supervision ("OSUP"), which required Petitioner to enroll in an Alternatives to

[2] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

Detention ("ATD") program with GPS monitoring. (Rodriguez Decl., ¶ 12; *see* dkt. # 1-4 at 1-5.) Between Petitioner's October 17, 2017, release into the United States on an OSUP and his June 27, 2026, arrest that led to his instant detention, Petitioner remained out of custody living in the United States. (Dkt. # 1 at 2.)

After being released on the OSUP, Petitioner filed a motion to reopen the removal proceedings that previously culminated in the 1998 order of removal being issued *in absentia*. (Rodriguez Decl., ¶ 13.) An immigration judge granted Petitioner's motion to reopen removal proceedings on May 30, 2018, and scheduled Petitioner to attend a hearing on February 26, 2020. (*Id.* ¶ 15.)

At the February 26, 2020, hearing, the immigration judge denied Petitioner's application for relief and ordered Petitioner's removal to Guatemala. (Rodriguez Decl., ¶ 16; *see* Clark Decl., ¶ 2, Ex. 3 (removal order).) Petitioner filed an appeal of the order of removal with the Board of Immigration Appeals ("BIA") on March 17, 2020, which remains pending as of August 25, 2026. (Rodriguez Decl., ¶ 17.)

The record is largely silent regarding Petitioner's immigration-related history after he filed his appeal with the BIA in 2020. It appears Petitioner remained out of custody and subject to supervised release. (*See* dkt. # 1-3 at 2 (asserting Petitioner reported as directed, participated in the ATD program, worked, and raised his U.S. citizen children during the last "eight years and nine months" of "supervised liberty").)

On June 27, 2026, ICE arrested Petitioner while he was on his way to work in Rochester, Washington. (Rodriguez Decl., ¶ 18; dkt. # 1, ¶ 17.) The Form I-213 DHS administrative report provided by Respondents states that an ICE arrest team "encountered and arrested" Petitioner after he was identified as being unlawfully present in the United States and subject to a 2020

final order of removal. (*See* Clark Decl., ¶ 2, Ex. 4 at 3.) ICE served Petitioner with a "Warrant for Arrest of [Noncitizen]." (Rodriguez Decl., ¶ 18; *see* Clark Decl., ¶ 2, Ex. 5.) He was transferred to the NWIPC, where he remains detained. (Rodriguez Decl., ¶ 19.)

On July 3, 2026, Petitioner was served with a Notice of Cancellation, which notified Petitioner that ICE cancelled his OSUP "based on Petitioner's reopened removal proceedings." (Rodriguez Decl., ¶ 20.) Officer Rodriguez asserts "Petitioner [is] no longer subject to provisions under INA § 241.4 based on [the] IJ's grant of the Motion to Reopen."[3] (*Id.*)

On August 10, 2026, Petitioner filed the instant petition. (Dkt. # 1.)

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner raises three grounds for relief. First, he asserts that his June 27, 2026, redetention, without notice or an opportunity to respond, violated his due process rights under the Fifth Amendment. (Dkt. # 1, ¶ 23.) Next, he asserts that his continued detention under 8 U.S.C. § 1226(a) without receiving a custody determination is unlawful. (*Id.* ¶ 24.) Finally, he asserts in the alternative that, should his detention instead be governed under 8 U.S.C. § 1231, Respondents violated federal regulations when they revoked his OSUP. (*Id.* ¶ 25.)

[3] 8 C.F.R. § 241.4 is entitled, "Continued detention of inadmissible, criminal, and other [noncitizens] beyond the removal period."

Respondents' primary argument is that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). (Dkt. # 8 at 2.) Alternatively, Respondents argue that even if the Court were to find Petitioner's detention discretionary under § 1226(a), "due process did not require a pre-deprivation hearing under the specific facts of this case." (*Id.*)

**A. Statutory Detention Authority**

The parties disagree on which statutory authority currently governs Petitioner's detention. Petitioner's primary position is that his detention is governed by the discretionary authority under § 1226(a) because he was arrested in the interior of the United States after having spent nine years of supervised release living in Washington State. (Dkt. # 1-3 at 4-5.) Respondents, on the other hand, contend that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) because he "was apprehended near the border shortly after his unlawful entry into the United States, was placed in reinstatement proceedings pursuant to 8 U.S.C. § 1231(a)(5), and then placed on an OSUP due to logistical concerns." (Dkt. # 8 at 2.) According to Respondents, when the immigration judge granted Petitioner's motion to reopen, his OSUP was thereafter "rendered inapplicable." (*Id.* (citing 8 C.F.R. § 241.4(b)(1)).) In essence, Respondents contend that Petitioner's motion to reopen his 1998 immigration proceedings operated to "place him back in the original status of [a noncitizen] seeking admission" and thus subject to § 1225(b). (Dkt. # 8 at 7.)

Section 241.4(b)(1) provides:

> **Applicability to particular aliens**—(1) Motions to reopen. [A noncitizen] who has filed a motion to reopen immigration proceedings for consideration of relief from removal, including withholding or deferral of removal pursuant to 8 CFR 208.16 or 208.17, shall remain subject to the provisions of this section unless the motion to reopen is granted. *Section 236 of the Act and 8 CFR 236.1 govern custody determinations for aliens who are in pending immigration proceedings before the Executive Office for Immigration Review.* (emphasis added).

The emphasized section appears to foreclose Respondents' argument. It is undisputed that Petitioner's motion to reopen was granted, subsequently denied, and Petitioner filed an appeal of that denial with the BIA.[4] (Rodriguez Decl., ¶¶ 15-17.) And because Petitioner's appeal is still pending (*i.e.*, "pending . . . before the Executive Office for Immigration Review", *see* 8 C.F.R. § 241.4(b)(1)), Section 236 and 8 C.F.R. 236.1 govern his custody determination. Section 236 is codified at § 1226, which contains the discretionary detention authority under which Petitioner contends he falls, § 1226(a). Respondents do not cite any authority that supports their argument that Petitioner's detention would revert back to § 1225(b) or acknowledge the clear statutory language identified above. (*See generally* dkt. # 8.)

Respondents do, however, contend that their position aligns with the Ninth Circuit's decision in *Rodriguez Vazquez v. Bostock,* 183 F.4th 1160 (9th Cir. 2026) because in that case "the court held that [§ 1225(b)(2)(A)] is best construed as applying to [noncitizens] entering the United States at the border, while [§ 1226(a)] governs inadmissible and deportable [noncitizens] already present in the interior who are first apprehended inland." (Dkt. # 8 at 6.)

But Petitioner was not arrested at the border. He was arrested on his way to work after continuously living in the United States for nearly a decade. (*See* Rodriguez Decl., ¶¶ 12, 18.) Thus, the only way to reconcile Respondents' argument under *Rodriguez Vazquez* with Petitioner's individual circumstances would require suspending Petitioner's status that he initially held at the border in 1998 into perpetuity, and ignoring the fact that he was neither applying for admission nor seeking admission on the day he was redetained—a position that has been rejected by the Ninth Circuit. *See Torres v. Barr*, 976 F.3d 918, 926 (9th Cir. 2020) (rejecting the government's theory that the time of an application for admission "continues,

---

[4] The Board of Immigration Appeals is housed within the Executive Office for Immigration Review (EOIR). *See* 8 C.F.R. § 1003.1(a)(1).

potentially for years or decades"); *Rodriguez Vazquez*, 183 F.4th at 1178 (rejecting the government's theory that a noncitizen "present in the interior of the United States remains in the perpetual state of seeking admission"). So contrary to Respondents' argument, *Rodriguez Vazquez* does not support their position; it puts it to bed.

Nevertheless, even if the Court were to accept this unsupported argument, Respondents have not shown Petitioner was initially subject to mandatory detention under § 1225(b) in 1998—a necessary condition for their "reversion back" argument to have any legal import. When ICE served Petitioner with the NTA in 1998, it was not at the border, but after Petitioner had already lived in the United States for over six years. (*See* Rodriguez Decl., ¶ 4 (acknowledging Petitioner entered the United States on May 10, 1992), ¶ 5 (stating Petitioner was served with an NTA on May 28, 1998).) Further, it is undisputed that Petitioner failed to appear for his 1998 immigration hearing because the final order of removal was issued *in absentia*. Thus, Petitioner must have necessarily been released from custody after he was initially served with the 1998 NTA. Respondents ignore this fact, but it is important because the only statutory mechanism for release from an otherwise "mandatory" detention under 1225(b) is through humanitarian parole. *See* 8 U.S.C. § 1182(d)(5); *see also Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (acknowledging the humanitarian parole exception "implies that there are no other circumstances under which [noncitizens] detained under 1225(b) may be released"). Here, there is no evidence showing Petitioner was ever released on humanitarian parole. So short of violating § 1225(b) by improperly releasing an otherwise mandated detainee, to which Respondents do not admit, the only way for Petitioner to have been released from custody in 1998 was through the discretionary authority under § 1226(a). Thus, even if the Court were persuaded by Respondents' logic, Petitioner would only revert back to the discretionary detention scheme in § 1226(a).

Finally, ICE's recent arrest records demonstrate Petitioner's *current* detention is governed under § 1226(a). When ICE redetained Petitioner on June 27, 2026, they did so through the use of a warrant authorized by Section 236 of the INA, which is codified at § 1226. (Clark Decl., ¶ 2, Ex. 5 at 2.) *See Rodriguez Vazquez*, 183 F.4th at 1173 (acknowledging the fact that § 1226 provided the authority for the government to detain noncitizens upon the issuance of a warrant showed plaintiffs "[were] at least facially subject to detention under § 1226(a)"). In addition, ICE only recently cancelled Petitioner's OSUP on July 3, 2026. (*See* Clark Decl., ¶ 2, Ex. 6 at 2.) So, while Respondents argue Petitioner's OSUP has not been operative since 2018 (*see* dkt. # 8 at 9), ICE's conduct for the last eight years suggests otherwise. Allowing Petitioner to remain released and ostensibly subject to conditions of his OSUP for the last eight years undermines any characterization of Petitioner's detention as mandatory. *See Bello Chacon v. Hermosillo*, 2025 WL 3562666 at *2 (W.D. Wash. Dec. 12, 2025) (finding § 1226, rather than § 1225(b), more likely to apply when the government treats the noncitizen as subject to discretionary detention).

This conclusion aligns with the Supreme Court's summary of these relevant "pre-final-order" authorities: "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. Here, Petitioner was redetained in the United States, after having been conditionally released in 2017, and with currently pending removal proceedings before the BIA. Accordingly, the Court finds that the record does not support the conclusion that Petitioner was subject to mandatory detention in 1998 that could ostensibly continue governing his detention today. Thus, to the extent

Respondents contend § 1225(b) provided a lawful mechanism to redetain Petitioner on June 27, 2026, or otherwise satisfied due process, the Court rejects that position. Setting any purported statutory authority aside, the government remained "obligat[ed] to effectuate the detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025).

This finding disposes of Petitioner's third ground for relief pled in the alternative under 8 U.S.C. § 1231. (*See* dkt. # 1 at 7.) That claim is denied because Petitioner's detention falls under § 1226(a).

**B. *Mathews* and Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see E.A. T.-B. v. Wamsley*, 795 F. Supp.3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

Both parties assess the lawfulness of Petitioner's June 27, 2026, redetention through the *Mathews* framework but reach opposite conclusions. (Dkt. ## 1-3 at 3-4, 8 at 7-10.)

Turning to the first factor, Respondents acknowledge Petitioner's liberty interest in continued release but argue it was a "conditional, time-limited" interest "rather than an

unqualified right to remain at large." (Dkt. # 8 at 8.) The Supreme Court has repeatedly recognized that "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp.3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Here, Petitioner has spent the vast majority of his time in the United States free. He has "lived openly in Washington State," raised his U.S. citizen children, and "supported his household" through his employment. (Dkt. # 1 at 5.) Those actions were only made possible because of his freedom, the revocation of which was entitled to due process. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). The first *Mathews* factor weighs in Petitioner's favor.

Respondents assert that the risk of error was low because the OSUP "became inapplicable as soon as Petitioner's motion to reopen was granted." (Dkt. # 8 at 9.) Thus, according to Respondents, Petitioner "was not subject to the provisions of that program." (*Id.*) The logic of this argument, and how it demonstrates a low risk of erroneous deprivation, is not immediately clear to the Court.

It is undisputed that Petitioner was released on an OSUP in 2017 and remained out of custody for the next eight and a half years. There are no allegations that Petitioner violated the conditions of his supervision at any point. (*See generally* dkt. # 8.) Instead, ICE revoked his supervision and arrested him because his motion to reopen removal proceedings was granted and agents erroneously believed Petitioner was subject to a final order of removal. (Rodriguez Decl.,

¶ 20; Clark Decl., ¶ 2, Ex. 4 at 3.) Even if Respondents identified an applicable regulation, law, or case that authorized ICE to redetain Petitioner without notice simply because his removal proceedings were reopened (which they do not), the motion to reopen was granted over eight years ago. So, in addition to failing to identify the legal mechanism that allowed ICE to redetain Petitioner simply because his motion was granted, Respondents also fail to explain why they took eight years to do so.

Moreover, the upshot of Respondents' unsupported argument—that Petitioner's OSUP was inapplicable as soon as the motion to reopen was granted in 2018—is that Petitioner spent the last eight plus years living unconditionally in the United States; a consequence seemingly not contemplated by Respondents' argument that only cuts against their position that his redetention did not require process or was otherwise mandatory under § 1225(b).

When noncitizens like Petitioner are released into the United States pursuant to an OSUP, DHS must first find that the noncitizen does not pose a danger to the community or a risk of flight. *See* 8 C.F.R. § 241.4(d). To then revoke that supervision nearly nine years later, without first reconsidering whether Petitioner posed a danger to the community or flight risk, came with a high risk of error. Respondents do not assert that any of that process occurred, nor do they contend here that Petitioner poses a risk of danger or flight such that his redetention arguably necessitated forgoing pre-deprivation process. Additional procedures could have provided an opportunity for Petitioner to challenge the factual and legal bases for his redetention. The second *Mathews* factor therefore weighs in Petitioner's favor.

Finally, although the government has legitimate interests in enforcing the immigration laws and ensuring appearance at proceedings, Respondents identify no concrete way in which providing a short, pre-deprivation custody hearing before revoking release would materially

impede those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp.3d at 1324; *Ortega v. Bonnar*, 415 F. Supp.3d 963, 970 (N.D. Cal. 2019). On this record, Respondents have not shown exigent circumstances—such as an immediate, specific danger or imminent flight—that would make pre-deprivation process impracticable. The third *Mathews* factor therefore also favors Petitioner.

Balancing the *Mathews* factors, the Court concludes that Respondents' redetention of Petitioner was unlawful. Habeas relief is therefore warranted.

Respondents suggest a bond hearing is the appropriate remedy for any "procedural deficiency" involving Petitioner's redetention. (*See* dkt. # 8 at 10 (and the Western District cases cited therein).) The cited cases are distinguishable. The petitioner in *Dovlatov v. Hernandez*, 2026 WL 1030454 (W.D. Wash. Apr. 16, 2026) challenged his detention under § 1225(b) and specifically requested a bond hearing pursuant to *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). *Dovlatov*, 2026 WL 1030454, at *1. The petitioner in *Balwan* challenged his detention without a bond hearing as violative of § 1226(a). *Balwan v. Bondi*, 2026 WL 497098, at *3 (W.D. Wash. Feb. 23, 2026). The petitioner in *Populus-Revuelta v. Scott*, 2026 WL 1067317 (W.D. Wash. Apr. 20, 2026) was ultimately found to be detained under § 1226(c), not applicable here, and received a bond hearing under *Martinez v. Clark*, 2019 WL 5968089 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019), a case articulating a framework also not applicable here. Finally, the court in *Singh v. Noem*, 2026 WL 592265 (W.D. Wash. Mar 3, 2026) found a bond hearing to

be the appropriate remedy after concluding the petitioner "failed to rebut" the government's assertion that he committed multiple violations of his OREC. *Id.* at *3.

Other than *Singh*, which involved a fact-specific finding of unrebutted release violations, the remaining cases cited by Respondents involve claims arising under the applicable statutory detention authority, either § 1225(b) or § 1226(a), rather than a Fifth Amendment due process challenge to the circumstances of the petitioner's *redetention*. Courts in this District generally find that a post-deprivation hearing is not the appropriate remedy for a constitutionally deficient redetention because the hearing "occur[s] after the fact" and "cannot prevent an erroneous deprivation of liberty." *See, e.g.*, *E.A. -T.B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025); *see also Ramirez Tesara*, 800 F. Supp. 3d at 1138 (granting petitioner's motion for a temporary restraining order that challenged his redetention under *Mathews* and finding that "immediate release [wa]s necessary to restore the status quo ante litem") (underlining in original). The Court similarly finds that restoring Petitioner to the status he held prior to his erroneous deprivation (*i.e.*, released in the United States and subject to reasonable conditions) is the appropriate remedy.

Because the Court finds release is appropriate under *Mathews*, it does not reach Petitioner's second claim for relief under § 1226(a), which seeks a bond hearing. (Dkt. # 1 at 6.) That claim is therefore denied as MOOT.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

a. Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

b. Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2) Petitioner's second claim for relief is denied as MOOT.

(3) Petitioner's third claim for relief is DENIED.

(4) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are reminded of the meet-and-confer requirement under this Court's chambers procedures.

Dated this 4th day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge